**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**J.D. Partnership, et al.,**

              **Plaintiffs,**                        **Case No. 2:00-CV-787**
                                            **JUDGE GREGORY L. FROST**
      **vs.**                              **Magistrate Judge Mark R. Abel**

**Berlin Township Board of Trustees, et al.,**

              **Defendants.**

**OPINION & ORDER**

The Court considers this matter pursuant to cross motions for summary judgment.[1]

(Docs. # # 99, 108). After careful consideration of the record, the Court **DENIES** Plaintiffs'

motion (Doc. # 108) and **GRANTS** in part and **DENIES** in part Defendants' motion (Doc. # 99).

**BACKGROUND**

Plaintiff J.D. Partnership's ("J.D.") principal place of business is in Ohio. (Pl.'s Am.

Compl. ¶ 1). Plaintiff T & R Properties ("T & R") is an Ohio corporation. *Id* at ¶ 2. Plaintiff

Ronald Sabatino ("Sabatino") owns the real property at issue in this case. *Id.* at ¶ 3.

Defendant Berlin Township Board of Trustees ("Board of Trustees") is charged with the

responsibility to govern Berlin Township's affairs, including, but not limited to, zoning, planning

and land use. *Id.* at ¶ 5. Defendant Berlin Township Zoning Commission ("Commission") is a

panel responsible for zoning matters in Berlin Township. *Id* at ¶ 6.

In October 1998 plaintiffs filed an application to reclassify 61.3 acres of land they owned

---

[1] Plaintiffs move for summary judgment only on their 42 U.S.C. § 1983 equal protection and just compensation claims. (Doc. # 108). Defendants move for summary judgment on all of Plaintiffs' claims. (Doc. # 99).

in Berlin Township north of Sherman Road ("Northern Property") on the east and west side of

Africa Road from farm residential (FR-1) to planned residential development (PRD).   The

Delaware County Regional Planning Commission ("Planning Commission") recommended

denial of the application.  In March 1999 plaintiffs filed an amended application to comply with

what plaintiffs contend was a representation by the Planning Commission that a proposal for less

than two units per acre would be favorably received.  Plaintiffs list four examples of zoning

approvals during the past fifteen years from FR-1 to PRD allowing approximately 2 units per

acre and one example in 1994 allowing four units per acre. The Delaware County Regional

Planning Commission again recommended denial after a study alleged several deficiencies that

plaintiffs contend were addressed or corrected before the recommendation.  Plaintiffs also

contend that the recommendation was based on considerations relating to future amendments of

the Zoning Code, PRDs and Land Use Map.[2]  After the recommendation and a hearing in June

1999 where Plaintiffs presented evidence in support of their amended application, Defendants

denied the application because "it was too close and allegedly inconsistent with the Zoning

Code, and did not dedicate and preserve land in excess of that reasonably related to the proposed

use of the Northern Property."  Plaintiffs contend that these reasons were arbitrary, unreasonable,

and capricious and the real reason was to deny Plaintiffs of development and retain the land as

open space.

        In July 1999, plaintiffs appealed the denial of their amended application to the Delaware

---

[2]Plaintiffs state that Defendants had been attempting to amend the Zoning Code and Land Use Map in 1998 through 2000 to prevent Plaintiffs' proposed development. (Doc # 60 at ¶ 29). In May 2001, Plaintiffs successfully obtained a declaratory judgment and injunction preventing Defendants from enforcing the amendments to the zoning code. *Id.* at  ¶ 32.

2

County Court of Common Pleas, which found it did not have jurisdiction to hear the matter because Defendants' denial of Plaintiffs' application was a legislative function.   In August 2000, on appeal of that decision, the Ohio Court of Appeals for the Fifth District reversed and remanded the lower court's decision, holding that Defendants' denial of Plaintiffs' application was administrative, not legislative, and therefore appealable.  *J.D. Partnership, et al., v. Berlin Township Bd. of Trustees, et al.*, 00CAH01002, at * 5 (Ohio App. 5th Dist. Aug. 2, 2000).  On remand, the lower court upheld defendants' decision denying the application.  Plaintiffs once again appealed to the Fifth District and, in May 2002, that court once again reversed the lower court, holding that Plaintiffs' application conformed to the PRD requirements and that Plaintiffs were therefore entitled to develop the land in accordance with the amended application.

In July 2002, an Agreed Judgment Entry allowing plaintiffs to develop the land in accordance with the appellate court decision was prepared by the parties and signed by the trial judge.  When the entry was presented at a public hearing, the Delaware County Prosecutor stated it was not known whether the Agreed Judgment Entry was subject to referendum.  Shortly thereafter, petitions were circulated and filed with the Berlin Township Clerk and a referendum petition concerning the Agreed Judgment Entry was submitted to the Delaware County Board of Elections to be placed on the ballot.  Plaintiffs made several arguments and protests, prior to the decision to place the referendum on the ballot, that the petitions were not valid and that the Entry was not subject to referendum.    These arguments included letters to Trustee elect and Circulator of the petitions Timothy Halter, the Delaware County Prosecutor and the Board of Elections as well as arguments at a formal hearing in front of the Board of Elections.    When these arguments failed, plaintiffs filed a Writ of Prohibition and Mandamus with  Ohio's Fifth

3

District Court of Appeals.  In October 2002, the Fifth District granted the Writ and ordered the referendum be removed from the ballot.   Defendants then appealed to the Supreme Court of Ohio, which upheld the Fifth District's decision in December 2002 and ordered the immediate issue of the development permits.

During and following the proceedings involving the land in question, the plaintiffs applied for and were denied an application of another similarly situated plot of land ("Southern Property") by Defendants.   This denial was overturned by the Delaware County Court of Common Pleas in January 2003 based on the May 2002 decision of the Ohio Fifth District Court of Appeals.

Plaintiffs filed the instant action on July 13, 2000, asserting that Defendants' alleged illegal stall and delay tactics violated their constitutional rights and resulted in a significant amount of damages from the delay in developing the land.  Plaintiffs assert claims for inverse condemnation, denial of due process, discrimination in application of zoning and land regulation laws, denial of equal protection, and deprivation of civil rights.   Plaintiffs seek declaratory, injunctive, and monetary relief.  The case was eventually stayed pending the resolution of the state court action.

On December 31, 2003, following the completion of the state court action, plaintiffs filed their Amended Complaint.  (Doc. # 60).  Plaintiff's claims against defendants include: 1) inverse condemnation; 2) due process violations; 3) discrimination and equal protection violations; 4) deprivation of civil rights; 5) estoppel; 6) unjust enrichment, and 7) conspiracy.  (Pl's Am. Compl. ¶¶ 163-233).  Plaintiffs again seek declaratory, injunctive and monetary relief.  *Id.*  After the Court's ruling on Defendants' motion to dismiss, Plaintiffs' claims for deprivation of civil

rights, estoppel, unjust enrichment, injunctive and declaratory relief remain.

Plaintiffs' and Defendants' motions for summary judgment are now fully briefed and ripe for review by the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is

5

not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

### I.    DEPRIVATION OF CIVIL RIGHTS

Plaintiff alleges that Defendants deprived them of their civil rights in violation of 42 U.S.C. § 1983.[3]  (Pls.' Am. Compl. ¶ ¶ 202-207).  Specifically, Plaintiff maintains that Defendants, while acting under color of state law, deprived them of their right to procedural and substantive due process as well as their right to equal protection.  *Id.* at 203-204; *see also* Doc. # 108 at 4, 36, 41.  Moreover, Plaintiffs assert that Defendants' actions resulted in an unlawful temporary taking of their property interest in the development of their land without just compensation.  (Doc. # 60 ¶ 203; Doc. # 108 at 42-52).  Consequently, Plaintiffs contend that they are entitled to damages for Defendants' alleged temporary taking of Plaintiffs' property interest.  (Doc. # 108 at 42).  In response, Defendants state that these claims are no longer viable as the Court previously dismissed Plaintiffs' inverse condemnation, due process, and equal protection claims.  (Doc. # 120 at 2) (citing Doc. # 70 at 8-14).  Alternatively, Defendants maintain that the doctrine of qualified immunity insulates them from Plaintiffs' § 1983 claims.

---

[3] Plaintiffs' fourth claim is entitled "Deprivation of Civil rights" and refers to 42 U.S.C. § § 1981 - 1988.  (Doc. # 60 at ¶ 202). Plaintiffs' Amended Complaint states that Defendants "acted under color of law" and Plaintiffs' summary judgment briefings refer only to 42 U.S.C. § 1983.  Section 1988 allows Plaintiffs to recover attorney's fees as part of the costs after succeeding on a Section 1983 claim.  42 U.S.C. Section 1988(b).  Moreover, the remaining sections are either criminal in nature, irrelevant, or have been omitted from the U.S. Code.  As such, the Court will examine Plaintiffs' deprivation claims within the context of § 1983 only.

(Doc. # 99 at 11).  Defendants' arguments prevail.

## A.    SECTION 1983 FRAMEWORK

Section 1983 creates a cause of action for deprivation of civil rights.  *Jaco v. Bloechle*,

739 F.2d 239, 241 (6th Cir. 1984).  The section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

For § 1983 purposes, the term "person" may be applied "to bodies politic and corporate."

*Quarles v. City of E. Cleveland*, 1999 U.S. App. LEXIS 34061, at * 9 (6th Cir.1999) (*citing*

*Monell v. Department of Soc. Servs.*, 436 U.S. 658, 688 (1978)).  This Court has previously held

that Township Boards of Trustees are "persons" within the meaning of § 1983.  *Danis Clarkco*

*Landfill Co. v. Trustees of German Township*, 1997 U.S. Dist. LEXIS 21081, at * 84-85 (S.D.

OH 1997).  Moreover, the Ohio Supreme Court held that any "governmental body having

powers and duties of government" is a body politic and corporate. Chapter 519 of the Ohio

Revised Code makes a township zoning commission responsible for zoning matters in a

township; accordingly, Defendant Berlin Township Zoning Commission has powers and duties

of government and is therefore a body politic and a person within the meaning of § 1983.  Next,

in this type of suit, the Sixth Circuit does not require Plaintiffs to name individual board

members or trustees in their official capacities as Defendants.  *See Leach v. Shelby County*

*Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).[4]  Finally, the Court holds that Defendants acted

_____

[4]The parties failed to address the issues of whether Defendants were "persons" within the
meaning of § 1983 and whether Plaintiffs needed to name the individual members of Defendants
in their official capacities.  Consequently,  the Court ordered the parties to simultaneously brief

7

under color of law because both Defendants' actions related to the zoning regulations and resolutions. *See* Ohio Rev. Code § § 503.01 *et seq.*, 505.01 *et seq.*, and 519.01 *et seq*.

Defendants assert that they are entitled to Eleventh Amendment Immunity.  (Doc. # 139 at 3).  The Court will quickly dispose of this argument by referring to Ohio Rev. Code § 2744.01(F), which defines "Political subdivision" or "subdivision" as a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."  Clearly, then, Defendants are political subdivisions under Ohio Rev. Code § 2744.01(F).  The United States Supreme Court has held that Eleventh Amendment immunity does not extend to independent political subdivisions.  *See Lincoln County v. Luning*, 133 U.S. 529 (1890).   Hence, the Court holds that Eleventh Amendment immunity is not available to Defendants.

Having decided that the Defendants are persons, that they acted under color of law, and that they are not entitled to Eleventh Amendment immunity, the Court will now detail the elements for a § 1983 claim.  Such a claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States, and 2) the deprivation was caused by a person acting under color of state law.  *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).  Whether a genuine issue of material fact exists as to these requirements within the context of Plaintiffs' claims will now be examined by the Court.

---

these issues. (Doc. # 137).  The Court is compelled to note that it is befuddled by Plaintiffs' response to the Court's order, because within it Plaintiffs repeatedly state that they addressed those issues in their motion for summary judgment, without citing to a single page where they did so.  (Doc. # 138; Defendants' response is Doc. # 139).  If Plaintiffs had previously and adequately addressed those issues, the Court would not have ordered the briefing.

**B.    DUE PROCESS**

Plaintiffs do not move for summary judgment on either their § 1983 procedural or substantive due process claim.  (Docs. # 108; Doc. # 121 at 12.).  Defendants, however, do move for summary judgment on those claims.  (Doc. # 99 at 4-6; Doc. # 125 at 3-4).  Defendants argue that because the Court already decided that they did not violate Plaintiffs' procedural or substantive due process rights, and because their conduct was, at best, negligent, there can be no § 1983 violation.  (Doc. # 99 at 4-6).  Plaintiffs contend that Defendants' admissions establish that the Court's earlier Order is clearly erroneous.  (Doc. # 121 at 2).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This Clause clothes individuals with the right to both substantive and procedural due process. *United States v. Salerno*, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment).  Substantive due process "prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty . . ." *Id.* (internal quotation marks and citations omitted). Procedural due process requires that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner." *Id.* (internal quotation marks and citation omitted); *see also Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002).

**1.    Substantive**

Plaintiffs allege that Defendants violated their substantive due process rights under § 1983 by "arbitrarily, wrongfully, and unlawfully" restricting the use of their land. (Doc. # 60 at ¶¶ 183, 203). Defendants counter that Plaintiffs have failed to prove that Defendants intentionally injured them or that Defendants acted arbitrarily in the constitutional sense.  (Doc. # 125 at 3-4).

9

To establish a substantive due process claim, Plaintiffs must first prove they possess a constitutionally protected property or liberty interest. *J-II Enters. v. Bd. of Comm'rs*, 2005 U.S. App. LEXIS 9140, at * * 7-8 (6th Cir. 2005). The Plaintiffs' burden does not stop there, however. Next, Plaintiffs must establish that "the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense." *Upsher v. Grosse Pointe Public Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002). Arbitrary is defined as conduct that "shocks the conscience." *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1716 (1998). Whether Defendants' conduct satisfies this standard is a question of law for the Court to determine. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992).

The Court must carefully scrutinize so-called substantive due process claims brought under § 1983 "because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). As such, the Court will "focus on the allegations in the complaint to determine how [the plaintiff] describes the constitutional right at stake and what the [governmental actor] allegedly did to deprive [the plaintiff] of that right." *Id.*

The Court begins by looking at how the Plaintiffs describe the constitutional right at stake in their Amended Complaint. *Upsher*, 285 F.3d at 452. The Plaintiffs allege that Defendants, under color of state law, deprived them of their right to substantive due process as secured by the Constitution of the United States. (Doc. # 60 at ¶ 203). Specifically, Plaintiffs allege that Defendants

> tried to interpret their Zoning Code contrary to past practice to stifle the developments, tried to arbitrarily change their Zoning Code without process, tried to apply revised plans to applications for development which pre-dated the revisions, hired advisors and relied

10

> on knowingly false information to rationalize their pre-determined denials, failed to
> follow normal and customary procedures, including presentation time and the tabling of
> actions, working with applications and administering their legal responsibilities, failed to
> conduct hearings and exercise their discretion in an unbiased and fair manner, failed to
> provide for the general welfare, efficient use of government resources and encourage the
> highest and best use of the property, and failed to perform their statutory duties as
> trustees to all citizens and landowners in respect of property and development rights for
> the Northern and Southern Properties . . .

*Id.* at ¶ 205.  Moreover, Plaintiffs describe Defendants' conduct as deliberate in their summary

judgment briefings.  (Doc. # 121 at 13).    Because Plaintiffs' Amended Complaint and filings

describe Defendants' conduct as "arbitrary, pre-determined, biased, and deliberate," the Court

concludes that a fair reading of the Amended Complaint alleges a willful violation.  *Upsher*, 285

F.3d at 452.

Having decided that Plaintiffs' Amended Complaint adequately alleges a willful

violation, the Court now directs its attention to Plaintiffs' remaining burden.  To begin, Plaintiffs

must demonstrate that they had a property interest in their zoning applications.    *Silver v.*

*Franklin Township, Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)[5]; *see also*

*Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-203 (6th Cir. 1995) (citing *Silver*).

To accomplish this, Plaintiffs are required to prove that the Defendants did not have the

discretion to deny Plaintiffs' use of the land as a housing development if they complied with

certain minimum, mandatory requirements. *Id.* (citing *G.M. Engineers and Assoc., Inc., v. West*

*Bloomfield Township*, 922 F.2d 328, 331 (6th Cir. 1990)).  If the Defendants had the discretion

to deny Plaintiffs' zoning applications even if Plaintiffs complied with certain minimum,

---

[5] The Court admonishes Plaintiffs for selectively citing to this case while ignoring the
language as set forth below.  (Doc. # 121 at 10; Doc. # 122 at 8).

mandatory requirements, then Plaintiffs would not have a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of their applications. *G.M. Engineers*, 922 F.2d at 331 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), and *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)). Plaintiffs, therefore, would have no property right. On the other hand, if the law circumscribed the discretion of the Defendants to such an extent that approval of the particular use was mandatory once Plaintiffs met certain minimal requirements, then a property interest could exist. *Id.* Neither party addressed these issues, so the Court will embark upon its own analysis.

A review of the 1989 Berlin Township Zoning Resolution establishes that Defendants had discretion to deny Plaintiffs' applications. (Docs. # 60 at ¶ ¶ 17-28). First, the resolution simply requires Defendants, when approving a zoning application, to determine if the proposed development: (1) is consistent in all respects with the purpose, intent and general standards of the zoning resolution; (2) is in conformity with the comprehensive plan or portion thereof as it may apply; and (3) advances the general welfare of the township and the immediate vicinity. (¶ 11.06(C) of the 1989 Zoning Resolution as amended in 1994). The resolution's plain wording does not require the Defendants to approve the application if it meets the standards; it simply requires the Defendants to make certain findings if the Defendants decide to approve the application. Moreover, the resolution's use of the words "purpose," "intent," and "general welfare" connotes discretion on the part of Defendants. Id. at ¶ 11.01. Consequently, because the resolution is discretionary and not mandatory, the Court holds under *Silver* that Plaintiffs do not have a "legitimate claim of entitlement" or a "justifiable expectation" in their applications. *Silver*, 966 F.2d at 1036; *see also J-II Enters*., 2005 U.S. App. LEXIS 9140 at * 8;*G.M.*

12

*Engineers*, 922 F.2d at 331.[6]  Plaintiffs therefore possessed no property interest that could sustain a substantive due process claim.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' § 1983 substantive due process claim is **GRANTED** and the Court will not address Defendants' immunity argument with respect to this claim.  (Doc. # 99).

### 2.    Procedural

In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim through one of two methods: "'(1) [by] demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss.'"  *Tri-Corp Mgmt. Co. v. Praznik*, 33 Fed. Appx. 742, 746 (6th Cir. 2002) (quoting *Macene v. MJW, Inc*., 951 F.2d 700, 706 (6th Cir. 1991)).

Plaintiffs fail to argue that Defendants deprived them of the essential elements of procedural due process: notice and an opportunity to be heard.  *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992).  Instead, Plaintiffs classify Defendants' behavior regarding their zoning applications as arbitrary and unlawful.  (Doc. # 60 at ¶ 205).  Plaintiffs

---

[6] Plaintiffs cite *Buckeye Community Hope Foundation v. City of Cuyahoga Falls*, 263 F.3d 627, 642 (6th Cir. 2002) for the proposition that they did have a property interest in their zoning application.  (Doc. # 108 at 44).  That case, however, is easily distinguishable from the case at bar.  The Sixth Circuit held that the *Buckeye* Plaintiffs had a property interest because the city initially approved their zoning application.  *Id.* Here, Defendants never approved Plaintiffs' applications.  Moreover, the United States Supreme Court reversed and remanded the majority of the Sixth Circuit's holding in *Buckeye*.  *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found*., 538 U.S. 188 (2003).

therefore base their § 1983 procedural due process claim on the latter method. Accordingly, the Court first turns to a discussion about whether the Plaintiffs have demonstrated a protected property or liberty interest. *Warren v. City of Athens*, 2005 U.S. App. LEXIS 11232, at * 25 (6th Cir. 2005) (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)).

The discussion proves short, as the Court held above that because Defendants had discretion to deny Plaintiffs' zoning applications, Plaintiffs did not have a property or liberty interest in the use of their undeveloped land as a housing development. *See Silver*, 966 F.2d at 1036; *see also J-II Enters.*, 2005 U.S. App. LEXIS 9140 at * 8. As such, Plaintiffs cannot establish a violation of their procedural due process rights and Defendants are entitled to summary judgment on Plaintiffs' § 1983 procedural due process claim.

## C.     EQUAL PROTECTION

Defendants correctly point out that the Court previously held that they did not deprive Plaintiffs of their right to equal protection. (Doc. # 120 at 2) (citing Doc. # 70 at 13-14); *see also* Doc. # 99 at 4 (citing Doc. # 70 at 8-14). However, Plaintiff assert that Defendants' admissions render the Court's decision on this topic incorrect. The parties' arguments thus implicate the law of the case doctrine.

That doctrine posits "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605 (1983); *see also United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (holding "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation"). When applying this doctrine, Courts decline to reopen what has been decided. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800,

14

817 (1988). The Supreme Court cautions that "a court should be loathe to [reexamine a prior

decision] in the absence of extraordinary circumstances such as where the initial decision was

clearly erroneous and would work a manifest injustice." *Id.* However, "it is not an abuse of

discretion to revisit a prior ruling that is found to be erroneous." *Pacific Employers Ins. Co. v.

Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002).

To succeed on their § 1983 equal protection claim, Plaintiffs must establish that the

Defendants intentionally treated them differently from others similarly situated and that there

was no rational basis for the difference in treatment. *Willowbrook v. Olech*, 528 U.S. 562, 564

(2000). The Court already held that Defendants granted re-zoning applications that were

similarly situated to Plaintiffs' applications, but declined to find an equal protection violation

because "the state court found that Defendants' actions were 'warranted under existing law.'"

(Doc. # 70 at 14). Hence, the Court concluded that Defendants' actions were rationally based on

a legitimate state interest. *Id.* As a result, the Court must address whether Defendants'

admissions render the Court's decision that a rational basis existed for Defendants' actions

clearly erroneous.

Plaintiffs, while not specifically addressing the law of the case doctrine or the Court's

August 9, 2004 Order, apparently urge the Court to ignore the doctrine and find that because

Defendants admitted that they deviated from the zoning regulations at issue when denying

Plaintiffs' applications, no rational basis exists for Defendants' behavior. (Doc. # 121 at 10, 11;

Doc. # 108 at 36-41; Defendants' Admissions # # 46-53; 23, 75-76, 168). The Court finds

Plaintiffs' argument well-taken in this regard. Defendants cannot admit to deviating from the

regulations at issue that were assumably developed to advance a legitimate state interest while

15

treating similarly-situated zoning applications differently and then claim that their actions were based on a legitimate state interest. Moreover, Defendants do not offer any explanation as to how their actions were based on a legitimate state interest.

The Court's analysis does not stop there, however. Instead, the Court must now determine if no genuine issue of material fact exists as to whether Defendants' actions with respect to Plaintiffs' zoning applications were intentional. Defendants aver that their actions were merely negligent, and offer the state court decisions that declined to award Plaintiffs' attorneys' fees as proof of the soundness of their argument. (Doc. # 125 at 2-3). On the other hand, Plaintiffs assert that Defendants' conduct was intentional, as evidenced by Defendants' admission that the trustees were predisposed to denying Plaintiffs' applications. (Doc. # 121 Admissions # 149-150). Moreover, Defendants admitted to delaying the development of Plaintiffs' properties. (Defendants' Admissions # # 65, 66). A genuine issue of material fact therefore exists as to whether Defendants' actions were intentional, and the Court **DENIES** Defendants' and Plaintiffs' motion for summary judgment on Plaintiff's § 1983 equal protection claims.

Because the Court found a genuine issue of material fact regarding that claim, the Court proceeds to analyze Defendants' assertion that they are entitled to qualified immunity. (Doc. # 99 at 10); *See Silver*, 966 F.2d at 1035. Officials performing traditionally executive or administrative discretionary functions are entitled to qualified immunity only if they can establish that the actions were within the scope of their duties and were taken with a reasonable belief that they were lawful. *Haskell v. Washington Township*, 864 F.2d 1266, 1277 (6th Cir. 1988) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Garvie v. Jackson*, 845 F.2d

16

647 (6th Cir. 1988). In other words, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for determining whether qualified immunity applies is therefore one of "objective reasonableness" that requires a "reasonably competent public official" to know the law governing his conduct. *Harlow*, 457 U.S. at 818-819.

Plaintiffs do not dispute that the actions of the Defendants that are at issue were administrative and discretionary. (Doc. # 121 at 6; Defendants' Admissions # # 82, 87, 88). Plaintiffs rely on the state court decisions that held Defendants' actions to be unreasonable and arbitrary to argue that Defendants did not undertake those actions with a reasonable belief that they were lawful. (Doc. # 121 at 6). Given Defendants' admissions that they were predisposed to denying Plaintiffs' applications and that their actions thus delayed Plaintiffs' developments and damaged Plaintiffs, and taking the holdings of the state courts into consideration, the Court cannot hold that Defendants' actions were objectively reasonable. (Defendants' Admissions # 63- 66, 70-73, 149, 150). As such, Defendants' argument that they are entitled to judgment on Plaintiffs' § 1983 equal protection claim because of qualified immunity is **DENIED**. (Doc. # 99).

## C.     TAKING WITHOUT JUST COMPENSATION

Plaintiffs and Defendants alike move for summary judgment on Plaintiffs' § 1983 takings claim under the Fifth Amendment. (Doc. # 99; Doc. # 108).[7] Essentially, Plaintiffs assert that

---

[7] The Fifth Amendment applies to the states via the Fourteenth Amendment. *See Chicago, B & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897); *see also* (Doc. # 60 at ¶ 163; Doc. # 121 at 51 n.15).

Defendants' repeated denials of their applications resulted in a temporary taking of their land without just compensation and deprived Plaintiffs of their "investment backed expectations" in violation of the Fifth Amendment. (Doc. # 108 at 42-43, 45, 46). The Takings Clause of the Fifth Amendment provides: ". . . nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. In response, Defendants proffer that the Court already held that they did not take Plaintiffs' property without just compensation because Plaintiffs always had an economically viable use for their property. (Doc. # 120 at 2) (citing Doc. # 70 at 8-10). The Court finds neither argument persuasive, and instead grants Defendants' motion for summary judgment due to ripeness concerns. (Doc. # 99 at 4).

The Sixth Circuit describes Plaintiffs' just compensation claim this way:

> Plaintiff[s] claim that the zoning applied to [their] land constitutes a taking of [their] property without just compensation in contravention of the Fifth Amendment, the remedy sought being the just compensation.

*Pearson*, 961 F.2d at 1215. Indeed, Plaintiffs assert that Defendants purported taking of their land cost Plaintiffs millions of dollars in lost development profits. (Doc. # 108 at 49-50). Defendants admit that their actions damaged Plaintiffs. (Def. Admissions 70-73).

To establish a regulatory takings claim, Plaintiffs must establish that: (1) their property has been taken - that is, that application of the regulation has gone too far; and (2) they have not received just compensation. *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986). Moreover, the Supreme Court held:

---

18

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking. . . . Similarly, if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-95 (1985) (internal citations omitted).  The Sixth Circuit noted "[t]he holding of *Williamson County*, therefore, is that takings claims do not ripen in zoning cases until (1) there has been a final decision by the relevant state decision maker and (2) the property owner has utilized appropriate state inverse condemnation procedures."  *Montgomery v. Carter County*, 226 F.3d 758, 765 (6th Cir. 2000).

Assuming, arguendo, that Defendants' actions did constitute a taking, Plaintiffs' claim must fail because it is not ripe.  Both parties neglected to address this issue.[8]  Because ripeness goes to the heart of the Court's ability to entertain the claim, the Court will *sua sponte* discuss it.  *See 10280 Northfield Rd., LLC v. Village of Northfield*, 2000 U.S. Dist. LEXIS 5679, at * 16 (N.D. Ohio 2000) (*sua sponte* dismissing complaint for lack of ripeness).

It is clear to the Court that the Defendants' decisions regarding Plaintiffs' zoning

---

[8] Plaintiffs confuse the exhaustion requirement with the ripeness requirement by relying on *Zinermon v. Burch*, 494 U.S. 113 (1990).  (Doc. # 108 at 51).  *See Williamson County*, 473 U.S. at 192-193 (distinguishing between the two requirements).  Additionally, *Zinermon* is factually inapposite as it did not address the Fifth Amendment or involve a zoning decision.  Instead, *Zinermon* discussed the alleged denial of equal protection to a mental patient in a custodial setting.

applications are final.  Equally clear is that Plaintiffs failed to even allege in their Amended

Complaint, or to state in their summary judgment briefings, that they have pursued an inverse

condemnation action under Ohio law, or that Ohio's inverse condemnation remedies were

inadequate.   The Supreme Court held "if a state provides an adequate procedure for seeking just

compensation, the property owner cannot claim a violation of the Just Compensation Clause

until it has used the procedure and been denied just compensation." *Williamson County,* 473

U.S. at 194-95.  Accordingly, under *Williamson County*, Plaintiffs' failure to pursue an inverse

condemnation claim at the state level renders their § 1983 just compensation takings claim

unripe.   The Court therefore **GRANTS** Defendants' motion for summary judgment on that

claim.  (Doc. # 99).

## II.    ESTOPPEL & UNJUST ENRICHMENT

Defendants move for summary judgment on Plaintiffs' estoppel and unjust enrichment

claims.  (Doc. # 99 at 8-10).  Regarding Plaintiffs' estoppel claim, Defendants assert that

estoppel does not apply against the state or its agencies when performing a governmental

function.  *Id.* at 8.  Defendants also maintain that they did not receive any benefit from their

alleged unlawful actions; accordingly, they were not  unjustly enriched.   *Id.* at 9.  Both of

Defendants' arguments prove successful.

### A.    ESTOPPEL

The Ohio Supreme Court has held that estoppel does not apply against a state or its

agencies in the exercise of a governmental function.  *Ohio State Bd. of Pharmacy v. Frantz*, 51

Ohio St. 3d 143, 146 (Ohio, 1990) (citing *Sekerak v. Fairhill Mental Health Ctr*. 495 N.E. 2d 14,

15 (Ohio 1986)); *see also*  (citing *Besl Corp. v. Pub. Util. Comm*.,  341 N.E.2d 835, 838  (1976)).

Zoning is a governmental function under Ohio law. *See Superior Uptown, Inc. v. Cleveland*, 313 N.E.2d 820, 823 (Ohio 1974) (holding that enacting zoning ordinances is a governmental function); *Paul C. Harger Trust v. Morrow County Reg'l Planning Comm'n*, 2004 Ohio App. LEXIS 6079, at * * 18-19 (Ohio Ct. App. 5th Dist. 2004) (holding that enforcement of zoning laws is a governmental function); *Reno v. City of Centerville*, 2004 Ohio App. LEXIS 729, at * * 27 (Ohio Ct. App. 2nd Dist. 2004) (holding that zoning inspections are a governmental function). Additionally, estoppel does not apply against local governments even when the party asserting estoppel detrimentally relied on assurances made by local government employees or agents. *See Williamsburg v. Milton*, 85 Ohio App. 3d 215, 219 (Ohio Ct. App. 12th Dist. 1993); *see also Ghindia v. Monus*, 1996 Ohio App. LEXIS 2465, at * 10 (Ohio Ct. App. 11th Dist. 1996). Consequently, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' estoppel claim as it relates to the alleged misrepresentations made to "officers and agents" of Plaintiff T & R Properties and Plaintiff Ronald Sabatino by officers, agents, or employees of Defendants.[9] (Doc. # 99; Doc. # 121 at 18 (citing Def. Admissions 93, 94, 103-106,111)).

Perhaps anticipating this result, Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment states that Defendants "engaged in an unlawful pattern of administrative behavior designed to encroach upon [Plaintiffs'] ability to use its [sic] real

---

[9] Bringardner told Sabatino that Berlin Township contemplated low density development for the area in which the Northern Property is located. (Def. Admission 94). Berlin Township's 1989 Zoning Resolution provides at section 11.06(A) "The applicant is encouraged to engage in informal consultations with the township Zoning Commission and the County Regional Planning Commission prior to formal submission of a development plan for review of a minimum of 30 days and request for an amendment of the zoning map, *it being understood that no statement by officials of the township shall be binding upon either*." (Emphasis added).

property in a lawful way." (Doc. # 121 at 18). The Court assumes that statement is an attempt to frame their estoppel claim as an equitable one. (Doc. # 122 at 18-19). That is, the Court should apply equitable estoppel against Defendants to prevent what Plaintiffs deem to be an injustice. After the Court's rulings above, the only potential injustice that remains is the alleged violation of Plaintiffs' equal protection rights under § 1983; indeed, Plaintiffs' Amended Complaint states that "Defendants made misrepresentations to Plaintiffs, including the assurances that Plaintiffs will be treated equally . . . " (*See* Doc. # 60 at ¶ 214; Doc. # 122 at 18).

According to the United States Supreme Court, the affirmative defense of equitable estoppel is designed to "to prevent actual or constructive fraud and to promote the ends of justice." *Heckler v. Community Health Services*, 467 U.S. 51, 59 (1984); *State ex rel. Ryan v. State Teachers Retirement Sys.*, 643 N.E.2d 1122, 1128 (Ohio, 1994). A *prima facie* case for equitable estoppel requires a plaintiff to prove four elements: 1) that the defendant made a factual misrepresentation; 2) that it is misleading; 3) that it induces actual reliance that is reasonable and in good faith; and 4) that it causes detriment to the relying party. *Romine v. Ohio State Hwy. Patrol*, 737 N.E.2d 586, 590 (Ct. App. Ohio 10th Dist. 2000). Moreover, equitable estoppel may be applied against a municipality only if municipality's agent or officer acted within his or her authority and the act actually induced reliance. *Studar v. Aurora City Bd. of Zoning Appeals*, 2001 Ohio 8780, at * 9 (Ohio Ct. App. 11th Dist. 2001) (citing *Franklin Twp. v. Meadows,* 720 N.E.2d 1011, 1017 (Ohio Ct. App. 9th Dist. 1998). The Ohio Supreme Court stated that courts should exercise restraint in applying the doctrine against governmental bodies. *Gold Coast Realty, Inc. v. Board of Zoning Appeals*, 268 N.E.2d 280, 281 (Ohio 1971). The municipality will be bound if the official or agent who acted was authorized to do so and the act

was not illegal at the time. *See Sergakis v. Busch,* 1999 Ohio App. LEXIS 6467 (Ohio Ct. App. 10th Dist. Dec. 30, 1999). The Ohio Supreme Court requires that claims of equitable estoppel be determined on the particular facts of each case. *In re Election of November 6, 1990 for Office of Attorney Gen.*, 569 N.E.2d 447, 457 (Ohio 1991).

The Court notes first that equitable estoppel is an affirmative defense, not a claim. *State ex rel. Ryan v. State Teachers Retirement Sys.*, 643 N.E.2d 1122, 1128 (Ohio 1994); *see also* Doc. # 121 at 17 (characterizing equitable estoppel as a defense). Thus, Defendants are entitled to summary judgment on Plaintiffs' equitable estoppel "claim." (Doc. # 99).

Moreover, even assuming, *arguendo*, that the actions of Defendants' agents were authorized and legal, that equitable estoppel could be applied as a claim, and therefore that the Court could apply equitable estoppel against Defendants, Plaintiffs fail to satisfy the first element of their *prima facie* burden - that Defendants made a factual misrepresentation. Quite simply, Plaintiffs have failed to direct the Court's attention to a single piece of evidence establishing that Defendants told Plaintiffs they would be treated equally. (Doc. # 60 at ¶ 214). Simply claiming that Defendants said something to that effect is not enough. The Court is "not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp.*, 889 F.2d at 111. Defendants are therefore entitled to summary judgment on Plaintiffs' equitable estoppel § 1983 equal protection claim. (Doc. # 60 at ¶ 214); s*ee Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (holding that a Court must grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case) (citing *Celotex Corp. v.*

23

*Catrett*, 477 U.S. 317, 322 (1986)); see also *Hockenberry v. Village of Carrollton*, 110 F. Supp.

2d 597, 605 (N.D. Ohio 2000) (granting summary judgment for the defendant where the plaintiff

failed to provide any specific evidence that would support his allegations).  In addition, Plaintiffs

failed to introduce any evidence or even allege that Bringardner's statement that Berlin

Township contemplated low density development for the area in which the Northern Property

was located was untrue.  (Defendants' Admission # 94).   Consequently, Defendants are entitled

to summary judgment on that aspect of Plaintiffs' equitable estoppel claim as well.  (Doc. # 99;

Doc. # 121 at 18); *see Sky Bank-Ohio Bank Region v. Belknap*, 2003 Ohio App. LEXIS 682, at *

* 7 (Ohio Ct. App. 3rd Dist. 2003) (affirming grant of summary judgment on equitable estoppel

claim because no misrepresentation was made).

### B.    UNJUST ENRICHMENT

The Court reaches the same result with respect to Plaintiffs' unjust enrichment claim.

(Doc. # 60 at ¶ ¶ 218-219).  Specifically, Plaintiffs argue that "Defendants have by its [sic] acts

and omissions to act acquired virtually all of the rights and interest in Plaintiffs' property, have

refused and failed to justly compensate therefore, and has thereby unjustly enriched itself [sic]."

*Id.* at ¶ 219. Defendants first posit that Plaintiffs' unjust enrichment claim necessarily fails

because the Court held in its August 9, 2004 Order that no taking had occurred.  (Doc. # 99 at 9).

Moreover, Defendants contend that they did not receive any benefit from their enforcement of

the zoning regulations and resolutions, thereby necessitating the dismissal of Plaintiffs' unjust

enrichment claims.   (Doc. # 125 at 5).

The elements of an unjust enrichment claim are: "(1) a benefit conferred by a plaintiff

upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit

by the defendant under circumstances where it would be unjust to do so without payment."

*Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Once again, Plaintiffs

failed to produce any evidence that Defendants, through their "acts and omissions" actually

"acquired all the rights and interests in Plaintiffs' property." (Doc. # 360 at ¶ 219). There is no

evidence in the record that Defendants acquired title to Plaintiffs' land or sold Plaintiffs' land

and kept the profit. Furthermore, Defendants never kept Plaintiffs from developing their land

when it was zoned FR-1. Additionally, as it stands today, Plaintiffs have achieved the zoning

designation they wanted for their land. Due to Plaintiffs' failure to produce any evidence that

Defendants actually benefitted from the acts or omissions Plaintiffs assigned to them, the Court

**GRANTS** Defendants' motion for summary judgment on Plaintiffs' unjust enrichment claim.

(Doc. # 99); *see Guardian Tech., Inc. v. Chelm Props., Inc.*, 2002 Ohio App. LEXIS 4947 (Ohio

Ct. App. 8th Dist. 2002) (affirming grant of summary judgment when plaintiff failed to establish

benefit to defendant in unjust enrichment claim).

## III.   DECLARATORY & INJUNCTIVE RELIEF

Lastly, Plaintiffs seek declaratory and injunctive relief. (Doc. # 99). Specifically,

Plaintiffs seek declarations under 28 U.S.C. § 2201 that: (1) they are entitled to be permitted

reasonable residential development . . . and receive in addition, interim damages for a temporary

taking of their property; or in the alternative, to damages . . . and to have the denial of their

Amended Application and Supplemented Application . . . declared invalid and set aside . . ."; and

(2) the new plan is arbitrary, unconstitutional, and unreasonable and without substantial relation

to public health, safety, morals, or the general welfare of the community . . ." (Doc. # 60 at ¶ ¶

221, 225). Plaintiffs also seek a permanent injunction: (1) against Defendants to "cease and

desist from enforcement and implementation of the arbitrary, discriminatory, and confiscatory

policies herein described"; and (2) "enjoining and restraining Defendant [sic], and each of its

agents, officers, representatives and employees, and all persons or agencies acting on behalf of

or in concert with any of them, from further enforcing this denial [sic] of New Plan and New

Map and such further and additional acts of Defendants, which are part of the continuous and

integrated course of conduct herein described, as may hereafter be discovered or determined to

be violative of the constitutional provisions above identified, . . . and which have contributed to

the damage done to Plaintiffs."  *Id.* at ¶ ¶ 208-212, 230.

Defendants move for summary judgment on all of Plaintiffs' claims for declaratory and

injunctive relief, arguing that the claims are moot and that Plaintiffs have failed to establish that

the New Plan and New Map are unconstitutional.  (Doc. # 99 at 6, 7).  Plaintiffs respond that

their claims are not moot and that an injunction is necessary to prevent Defendants' "arbitrary"

enforcement of the New Plan and New Map against them. (Doc. # 121 at 14-16).  Defendants'

arguments prevail.


A.      **DECLARATORY RELIEF**

Title 28, Section 2201 of the United States Code provides:

In a case of actual controversy within its jurisdiction, . . .  any court of the United States,
upon the filing of an appropriate pleading, may declare the rights and other legal relations
of any interested party seeking such declaration, whether or not further relief is or could
be sought. Any such declaration shall have the force and effect of a final judgment or
decree and shall be reviewable as such.

Plaintiffs first move the Court to declare that "they are entitled to be permitted reasonable

26

residential development . . . and receive in addition, interim damages for a temporary taking of their proper; or in the alternative, to damages . . . and to have the denial of their Amended Application and Supplemented Application . . . declared invalid and set aside . . ." (Doc. # 60 at ¶ ¶ 221).  The Court holds that Plaintiffs' request is moot.  Plaintiffs' zoning applications were approved, and Plaintiff Sabatino stated at his deposition that the Southern Property is fully developed and that the Northern Property is "partially developed" because of issues with the water company.  (Sabatino Dep. 200-202).  The Southern Property has received final plat approval from non-party Delaware County; Plaintiffs have filed an application with Delaware County for final plat approval for the Northern Property and are awaiting a decision regarding that parcel.  *Id.* at 203.  Furthermore, the Court held above that Defendants' actions or omissions did not amount to a temporary taking of Plaintiffs' land.  As such, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' first claim for declaratory relief.  (Doc. # 99).

Next, Plaintiffs move the Court for a declaration that the New Plan and New Map are invalid and "arbitrary, unconstitutional, and unreasonable and without substantial relation to public health, safety, morals, or the general welfare of the community . . ." (Doc. # 60 at ¶ ¶ 221, 225). In keeping with the Ohio Supreme Court's mandate, the Court begins with the strong presumption that the New Plan and New Map are valid.  *Central Motors Corp. v. City of Pepper Pike*, 653 N.E.2d 639, 642 (Ohio 1995) (citing *Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals,* 527 N.E.2d 825, 827 (Ohio 1988)).  Moreover, "the party challenging the validity of a zoning classification bears, at all stages of the proceedings, the burden of demonstrating that the provision is unconstitutional" beyond fair debate.  *Ketchel v.*

27

*Bainbridge Twp.*, 557 N.E.2d 779 (Ohio 1990); *Gerijo, Inc. v. Fairfield*, 638 N.E.2d 533, syllabus (Ohio 1994). Under Ohio Supreme Court precedent, there is little difference between the "beyond fair debate" standard and the "beyond a reasonable doubt" standard. *Karches v. Cincinnati* (1988), 526 N.E.2d 1350, 1357 at fn. 7 (Ohio 1988).

Once again, Plaintiffs fail to meet their burden. In their memorandum in opposition to Defendants' motion for summary judgment, Plaintiffs fail to discuss how the New Plan and New Map are unconstitutional. (Doc. # 121 at 14-16). Additionally, the Court notes that Plaintiffs failed to produce any evidence that the New Plan and New Map are unconstitutional. The Court thus **GRANTS** Defendants' motion for summary judgment on Plaintiffs' New Plan and New Map declaratory judgment claim. (Doc. # 99).

## B.     INJUNCTIVE RELIEF

Briefly stated, Plaintiffs seek permanent injunctions: (1) against Defendants to "cease and desist from enforcement and implementation of the arbitrary, discriminatory, and confiscatory policies herein described"; and (2) "enjoining and restraining Defendant [sic], and each of its agents, officers, representatives and employees, and all persons or agencies acting on behalf of or in concert with any of them, from further enforcing this denial [sic] of New Plan and New Map and such further and additional acts of Defendants, which are part of the continuous and integrated course of conduct herein described, as may hereafter be discovered or determined to be violative of the constitutional provisions above identified, . . . and which have contributed to the damage done to Plaintiffs." *Id.* at ¶ ¶ 208-212, 230.

Plaintiffs' case is based upon the allegation that Defendants' have applied the zoning resolution and regulations against Plaintiffs in an arbitrary manner. Ultimately, then, what

Plaintiffs are truly asking for is not two separate injunctions prohibiting Defendants from enforcing arbitrary policies,[10] but rather for a single injunction that prohibits Defendants from applying the zoning regulations and resolutions against them in what Plaintiffs describe as an arbitrary fashion.

It is well settled that in order for an injunction to issue, the moving party must show a likelihood of success on the merits.  Given the Court's ruling above, the only viable claim that remains is Plaintiffs' § 1983 equal protection claim.  As such, a question exists as to whether Defendants applied the zoning regulations and resolution against Plaintiffs in a manner violative of the Equal Protection Clause.  Hence, the Court is unable to tell whether Plaintiffs have shown a likelihood of success on the merits on their claim for injunctive relief as it pertains to their § 1983 equal protection claim, and the Court **DENIES** Defendants' motion for summary judgment on that claim, but **GRANTS** the motion as it pertains to Plaintiffs' other claims (i.e. § 1983 substantive and procedural due process, and takings).  (Doc. # 99).

**CONCLUSION**

The Court **GRANTS** Defendants' motion to file their supplemental brief (Doc. # 140) because of the Court's June 8, 2005 Order.

The Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' § 1983 substantive due process, procedural due process, and just compensation claims; **GRANTS**

---

[10] As noted above, Plaintiffs fail to present the Court with any evidence that the regulations or resolutions themselves are arbitrary and / or unconstitutional.

Defendants' motion on Plaintiffs' claims for estoppel, unjust enrichment, and declaratory relief; **DENIES** Defendants' motion for summary judgment on Plaintiffs' § 1983 equal protection claim; **DENIES** Defendants' motion regarding Plaintiffs' claim(s) for injunctive relief on Plaintiffs' § 1983 equal protection claim; and **GRANTS** Defendants' motion relative to Plaintiffs' claim(s) for injunctive relief on Plaintiffs' § 1983 substantive due process, procedural due process, and just compensation claims. (Doc. # 99). The Court also **DENIES** Defendants' request to supplement their motion with additional briefing regarding *res judicata* - any documents they needed to "fully present this defense" should have been requested and obtained long ago. (Doc. # 99 at 16).

The Court **DENIES** Plaintiffs' motion for summary judgment in its entirety. (Doc. # 108).

**IT IS SO ORDERED.**

  /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**